(No. 6417.   October 8, 1936.)

LOT L. FELTHAM, Plaintiff, v. W. W. SIMMONDS, County Auditor in and for Lemhi County, State of Idaho, Defendant.

[61 Pac. (2d) 409.]

James W. Galloway and Lot L. Feltham for Petitioner.

E. H. Casterlin and E. W. Whitcomb for Defendant.

HOLDEN, J.—July 9, 1936, petitioner caused to be filed in the office of the county auditor, his declaration of candidacy for nomination for prosecuting attorney of Lemhi county, as a non-political candidate, at the nominating election to be, and which was, held August 11, 1936. On the same day, to wit, July 9, 1936, a petition in the form provided by statute was filed in the auditor's office, and the filing fee paid by petitioner. In the preparation of the official nominating ballot, defendant county auditor placed the name of petitioner at the head of both the republican and democratic primary election tickets, as follows: "Non-Political Candidates. Prosecuting Attorney. Feltham, Lot L." The name of the petitioner was the only name appearing on the official primary election ballot as a non-political candidate. August 19, 1936, petitioner having received 397 votes at the nominating election, defendant county auditor issued a certificate of nomination certifying that petitioner was nominated on the non-political ticket for the office of prosecuting attorney of Lemhi county, as shown by the official canvass of the returns of said election. September 7, 1936, defendant county auditor refused to place the name of the petitioner on the official November, 1936, general election ballot. September 26, 1936, an original application was filed in this court praying for the issuance of a peremptory writ of mandate to compel defendant county auditor to place petitioner's name on said general election ballot as a non-political candidate. October 1, 1936, defendant county auditor filed a demurrer to said petition demurring thereto upon the ground that it does not state facts sufficient to constitute a cause of action, or to entitle the petitioner to a writ of mandate. The matter was noticed for hearing and was heard October 3, 1936.

By section 33–804, I. C. A., the legislature expressly fixed not only the contents, but also the form of a general election ballot. Section 33–804, *supra*, provides, among other things, that

"The width of the ballot must be divided into equal perpendicular spaces, one for each political party represented by the different opposing candidates, in which the tickets of the different parties must be printed, and one similar in which only the names of the different offices to be filled at the election shall be printed, and below which the voter may write the names of the persons he wishes to vote for. These perpendicular spaces, or party tickets, must each be surrounded by very heavy leaded lines, and between each space, or party ticket, there must be a blank space of one-half inch. At the top of each ticket must be printed the caption or name of the political party in a size of type not smaller than long primer. Immediately below the middle of such caption or name, must be printed a circle at least three-fourths of an inch in diameter, within which the voter may place a cross (X), and thereby he votes, and his vote must be counted for all the candidates named in that perpendicular space, or party ticket, except such as he shall erase by drawing lines through the names of those he does not wish to vote for. Immediately below the circle above named must be drawn a horizontal line, below which must be printed the names of the offices, to be printed in small capitals, and the names of the candidates therefor in not smaller than long primer capitals."

It appears, then, that the statute, in substance, requires: that a general election ballot be divided into equal perpendicular spaces, one for each political party represented by the different opposing candidates, in which the *tickets* of the different *parties* must be printed; that a similar space shall be provided in which *"only* the names of the different offices to be filled at the election shall be printed, and below which the voter may write the names of the persons he wishes to vote for"; that the "perpendicular spaces, or *party tickets,* must each be surrounded by very heavy leaded lines"; that "between each space, or *party ticket,* there must be a blank space of one-half inch"; that "at the top of each ticket must be printed the caption or *name* of the *political party"*; that "immediately below the middle of such caption or (party) name, must be printed a circle

. . . . , within which the voter may place a cross (X)," and that such "vote must be counted for all the candidates named in that perpendicular space, or *party ticket*, . . . . " (Emphasis mine.)

Therefore, under the terms of the statute, the general election ballot must first be divided into equal perpendicular spaces, one for each political party; that having been done, the *name* of each *political party ticket* must be printed at the top of each such space, for example: "Republican Ticket," "Democratic Ticket," or "Union Party Ticket," as the case may be, below which must be printed the *names* of the *candidates* of the *political parties,* respectively. And, in order to make sure that there be no misunderstanding of the intention of the legislature as to what could be printed on an official general election ballot, a form of ballot was prepared and incorporated in, and made a part of, the statute, which form shows exactly the requirements as to spacing, names of political party tickets, candidates, etc. At the top of such form, in the spaces provided therefor, we find: "Republican Ticket," "Democratic Ticket," and "Populist Ticket," illustrating the meaning and intention of the legislature. We find also that there is a similar space into which the *names* of the different *offices* to be filled at a general election are printed, but nowhere, either in that part of the statute fixing the contents of a general election ballot, or in the form of such ballot, is provision made for printing on such ballot any *ticket* whatever other than the tickets of *political parties.*

This court has no power to prescribe either the contents or the form of an election ballot. Nor have we power to require defendant county auditor to print anything on a general election ballot not authorized by statute. While the legislature provided for printing the names of non-political candidates on a *nominating ballot,* it made no provision whatever for printing such names on an official general election ballot. We have no power to legislate in the premises, nor can we compel defendant county auditor to print petitioner's name on such ballot when the legislature has failed to make any provision therefor. In preparing and printing a

general election ballot, an auditor must follow the statute, and in doing so, he may and must print only what the law requires and nothing more.

Demurrer sustained. Writ denied.

Givens, C. J., and Budge, Morgan and Ailshie, JJ., concur.